GEORGE HANCOCK v. FRANCIS WINANS.

Agreements of counsel, respecting the conduct of causes in Court, may be set aside or disregarded, when to enforce them would work inconvenience to the Court or injustice to a party.

The Court in which such agreement is sought to be enforced, must be the judge of the sufficiency of the cause for declining to enforce it.

An agreement of counsel which would work an inconvenience, as to take up causes out of their regular order, the Court would not enforce.

Applications to set aside such agreements are addressed to the discretion of the Court, to be exercised, of course, with a due regard to the rights of the parties litigant; and this Court cannot undertake to control its exercise, unless it were apparent that it operated to the prejudice of some right of the appellant.

Where there were several cases between the same defendant and different plaintiffs, all represented by the same counsel, and the counsel made an agreement that the defence pleaded in a certain one of said causes, in which D was plaintiff, (which was not the first on the docket,) should be considered as pleaded in all, and that the decision of all should be determined by the decision in said case; and when the first of said cases on the docket was called for trial, on motion of the plaintiff, said agreement was, for good cause, set aside by the Court, whereupon the defendant asked a continuance, to give him time to make up his pleadings and prepare his defence; it was held to be a sufficient answer to said application, that the plaintiff offered to permit defendant to read on the trial the answer filed in the case in which D was plaintiff, and prepare his answer afterwards.

Whether it is the right of a party to have the jury polled, in order to render it certain that they are all agreed to the verdict, has not been determined by this Court; and the authorities are not agreed on the question.

It is believed to have been generally treated as a matter of right, in this State, at least in criminal cases, to have the jury polled.

Admitting the right in general, the question here is whether, where the parties have consented that the jury, when they shall have agreed upon their verdict, may return it sealed to the Clerk in the recess of the Court, and disperse, and

they afterwards come into Court to have their verdict published, it is the right of a party to have them polled to ascertain, not whether it was their verdict when sealed and returned to the Clerk, but whether they are still of the same mind; held not, and that the parties must be held to have waived the right to have the jury polled, unless it be for the purpose of ascertaining whether they were all agreed to it when it was returned; and that it is to be received and recorded only subject to that inquiry.

Appeal from Travis. Tried below before the Hon. Thomas H. DuVal.

Suit by appellee against appellant on a note signed by Logan Vandever as principal and defendant as surety. The petition alleged the particulars of the plaintiff's diligence in having the note allowed and approved as a valid claim against the estate of Vandever, who had departed this life. The defendant pleaded in abatement, to the effect that plaintiff had not used due diligence in the prosecution of the claim against Vandever's estate, &c.; and to the merits, that the note was signed by him without any consideration, and detailed the circumstances under which, he alleged, he signed the note for the mutual accommodation of the plaintiff and Vandever, and with the express agreement that he should not be required to pay the same, except in a certain event which would pass a consideration to him, but which had not taken place. Verdict and judgment for plaintiff.

First bill of exceptions as follows:—

Be it remembered, that on the 19th day of January, 1857, the above entitled and numbered case being regularly reached and called for trial, and on the motion of the attorneys for the parties respectively, the case of John W. Bunton v. George Hancock, and the case of Paul Deets v. Geo. Hancock, were set to be taken up on 22d January, 1857, for trial, on the following agreement previously entered into by the attorneys of the parties respectively, to wit: "John W. Bunton v. Geo. Hancock, No. 1029, and Paul Deets v. Geo. Hancock, No. 1032. The State of Texas, Travis county District Court, June Term, 1856. In the above entitled cases, the attorneys make the following agreement, to wit:—

"That said defendant file his said plea in abatement, made out in the case of said Bunton v. Hancock, his exceptions and answers in the same case, and his exceptions and answers in the said case of Deets v. Hancock, and that said plea, exceptions and answers be considered as filed and applicable as the defend-

21

ant's defence in each of said cases, and also in the case of Deshny Bunton v. Geo. Hancock, Francis Winans v. Geo. Hancock, John Oatman v. Geo. Hancock, Wm. Oatman v. Geo. Hancock, and Seth Mabry v. Geo. Hancock, all now pending in said Court, without the necessity of making out said plea, exceptions and answers in each of said above named cases, (so in the Transcript.— REPS.) and the final determination of said first named cases be the judgment in each of the other named cases. June 24th, 1856. Haralson, Flournoy & Robards, Attorneys for plaintiffs. Hancock & West, Attorneys for defendant." Which agreement is marked filed on 16th June, 1856. And on the said 22d January, A. D. 1857, so set for taking up said cases of John W. Bunton v. Geo. Hancock, and Paul Deets v. George Hancock, the said attorneys for plaintiffs moved the Court to set aside said agreement above set out, and to take up the said case of Francis Winans v. Geo. Hancock, as that stood first on the docket, to which motion defendant's attorneys would not agree, because they were not prepared to take up any of the cases, except those set, whereupon the Court required plaintiff's attorneys to make out their showing to have said agreement set aside, on which showing said agreement was by the Court set aside, of which motion plaintiff's attorneys gave the defendant's attorneys notice on the said 19th after said case had been set for the said 22d, which motion was by the Court sustained, and said last named case was then called for trial. Whereupon the said defendant asked a continuance of said case to give him time to make up his pleadings, and prepare his defence, on which plaintiff's attorneys offered to permit defendant to read the answer made out in the said case of Deets v. Hancock in the trial of this case, and to prepare his answer afterwards. Whereupon the Court refused a continuance of this case, and ordered the parties to proceed to trial. To all of which several rulings of the Court setting aside said agreement, to calling up this case, refusing a continuance of the same, and ordering the parties to proceed to the trial of the same, defendant by attorneys except, &c.

The "showing" upon which the agreement was set aside was not included in the bill of exceptions, and, in the view of the question taken by this Court, is not important.

Second bill of exceptions as follows :—

Be it remembered, that on the trial of the above entitled cause the jury retired to consider their verdict, and it was agreed that the jury might return their verdict sealed to the Clerk. After

considering for some considerable time, of the same, and after the Court had adjourned for that day, being the     day of     and on Friday, that the jury sealed their verdict and delivered the same to the Clerk, on Saturday morning, and then dispersed; that on Monday following     the plaintiff in open Court demanded that the verdict be opened and read, and the jury not being present the defendant objected to the publication of the verdict, unless the jury were present and were willing that the same should be published as their verdict, and the Court refused to open the verdict unless the jury were present, and ordered the Sheriff to have the jury present in Court on the next succeeding day, being Tuesday.    On the next day, all the jury being present in Court, the defendant asked that the jury might be polled, and that the Court would ask of each of the jurors if they then at the time of its publication agreed to the verdict.    To this mode of polling the jury the plaintiff objected, and asked that the jury should be questioned as to whether or not they agreed to the verdict at the time that it was sealed and handed to the Clerk.    And the Court refused to poll the jury in the manner asked by defendant, and polled them as asked by plaintiff, to which the defendants excepted, on the ground that the verdict would not be legal unless the jury would agree to the same at the time of its publication in their presence, and because the Court would not be informed as to whether they agreed to it at that time, without polling them in the manner asked by defendant.    The Court then polled the jury as asked by plaintiff, and several of the jurors (two or three in number) answered with some apparent hesitation, that they had agreed to the verdict when it was delivered to the Clerk, but none of the jury were asked or stated that they agreed to the verdict at the time of its publication in open Court as above, though they all said they had agreed to it when sealed up and delivered to the Clerk.    To which ruling of the Court in so polling the jury the defendant excepted, &c.

*Hancock & West*, for appellant, argued that there was no sufficient cause shown for setting aside the agreement of counsel.

II. That the continuance should have been granted on the ground of surprise.

III. That the verdict was contrary to the evidence. The main ground urged was that the testimony of the principal witness for plaintiff was not reliable, and was discredited by other witnesses.

IV. The fourth and last error is believed to be conclusive of this case. The Court refused to examine the jury or permit them to say whether or not they agreed to the verdict at the time of its publication. This is believed to be not only subversive of the rights of the parties, but wholly unsupported by a single authority.

Bacon Abr. 10 vol., Tit. VERDICT (F) on page 315, lays down the law as follows, in a case precisely similar to the one at bar: "When the jury agree upon a verdict during the adjournment of Court and separate by permission, if on coming into Court, one of the jury dissents, judgment cannot be entered on the verdict." Again, on the same page the same author says: "When the jury seal a verdict in their room, and afterwards come into Court and vary its terms, the latter is the true verdict."

The same doctrine is laid down and clearly illustrated in the last edition of Graham and Waterman on New Trials, vol. 2, ch. 8th, p. 548–549.

The following cases are precisely in point, and the current of authority, going to show the ruling under consideration erroneous, is unbroken. (Lawrence v. Stearns, 11 Pick. 501; Rousseau v. Doyssen, 4 Cond. La. R. 513; 8 Mart. N. S. 273; Douglass v. Tousy, 2 Wend. 352; Bunn v. Hoyt, 3 Johns. 255.)

*Haralson, Flournoy & Robards,* for appellee, argued that the agreement was properly set aside.

II. That there was no showing of surprise, and that the circumstances did not suggest it.

III. That the verdict was supported by the evidence.

IV. The point as to the polling of the jury, has been clearly settled by the authorities. (12 Pick. R. 496; 4 Id. 239; 4 Foster, R. 437; 3 Id. 507; 7 Id. 100; 4 Gilm. R. 336; 8 Ohio R. 405; 13 Id. 490; 5 Greenl. R. 333.) In 3 Foster, (N. H.) 507, and 4 Foster, 437, the precise question presented by the record in this case arose, and it is argued at length by the Court. It seems however that the appellee should scarcely need authority to sustain a proposition so necessary to correct policy.

WHEELER, J. Agreements of counsel respecting the conduct of causes in Court are not to be viewed in the light of contracts, which the Court is bound to enforce. They are rather to be treated as affording the rule of practice, in so far, in the parti-

cular case. But as matter of practice, they are not absolutely obligatory upon the Court; but may be set aside, or disregarded when to enforce them would work inconvenience or injustice. Under the rules of the Court (Rule 19th) such agreements of counsel are not enforced when not in writing, because of the inconvenience which would result from differences or disputes as to the terms of the agreement. When in writing the Court will enforce them, unless there be good cause for declining to do so; and of the sufficiency of the cause the Court in which the agreement is sought to be enforced, as the rule of practice in the case, must be the judge. An agreement of counsel which would work an inconvenience, as to take up causes out of their regular order, the Court would not enforce. These matters of practice the Court must have the power to control according to its own sense of justice and propriety, irrespective of the agreements of counsel: and its rulings upon such questions, will not, in general, be the subject of revision. The application to set aside the agreement in this case addressed itself to the discretion of the Court, to be exercised, of course, with a due regard to the rights of the parties litigant; and this Court cannot undertake to control its exercise, unless it were apparent that it operated to the prejudice of some right of the appellant. And this brings us to consider whether the continuance asked was improperly refused.

It is insisted that the setting aside of the agreement operated a surprise upon the defendant, and that on that ground a continuance should have been granted. But the continuance was asked to obtain time to make up the pleadings and prepare the defence. This was answered by the offer of the plaintiff's attorney to proceed to trial upon the answer, which, it seems, had been intended to apply to this case, to be prepared for the case afterwards. This the Court might well deem reasonably to have answered the purpose for which the continuance was sought; and that having been done, there was no error in refusing a continuance.

It cannot be doubted that the verdict was fully warranted by the evidence, under the charge of the Court—which was not unfavorable to the defendant—if the plaintiff's witnesses were to be believed. And that was a question exclusively for the jury. They were the judges of the credibility of the witnesses, and the weight of evidence. There is no case in which this Court has undertaken to control the verdict of a jury upon such a question.

The remaining objection to the judgment, which relates to the

polling of the jury, presents, as it seems to us, the only question of difficulty in the case. Whether it is the right of a party to have the jury polled, in order to render it certain that they are all agreed to the verdict, has not been determined by this Court; and the authorities are not agreed on the question. The practice of polling the jury obtains in England and probably in most of the States, at least in criminal cases. But whether it is as a matter of right to the party, or discretion with the Court, is not so clear. The question was examined by Chief Justice Shaw in The Commonwealth v. Roley (12 Pick. 496, 512,) and while the Court admitted the existence of the practice in England and New York, it was said to be a question of some difficulty to determine how far it was a matter of right to the party, or discretion with the Court. The Court in that case held that it was not the right of the prisoner to have the jury polled; but they rested their opinion mainly on the consideration that the practice had not obtained in that State. The Courts of several of the States deny the right, and do not admit the practice, even in criminal cases; (4 Pick. 239; 5 Greenl. 333; 3 Foster, 507; 4 Id. 437;) while in others, and, it is believed, in most of the States, the practice obtains; (1 McCord, 525; 1 Wend. 91; 3 Cowen, 23; 11 Ohio, 472;) and I apprehend it is there generally recognized as a matter of right. It is believed to have been generally so treated in practice in this State, at least in criminal cases, although the point has not been authoritatively determined.

Admitting the right in general, the question here is whether, where the parties have consented that the jury, when they shall have agreed upon their verdict, may return it sealed to the Clerk in the recess of the Court, and disperse, and they afterwards come into Court to have their verdict published, it is the right of a party to have them polled to ascertain, not whether it was their verdict when sealed and returned to the Clerk, but whether they are still of the same mind. This, it is conceived, is a very different question from that of the right to poll the jury where their verdict is returned by them into Court without their having been permitted to disperse.

The practice of returning a sealed verdict is comparatively modern. Formerly the jury were not permitted to separate until their verdict was returned into Court, and in order to enforce unanimity they were deprived, for the time, of the necessaries of life. But this severity has been relaxed, and has given place, in modern times, to a more enlightened reason; and the relaxation

Hancock v. Winans.

has been found to promote convenience in practice, without prejudice to individual security or public justice. When the jury return their verdict into Court before separating, no abuse can arise from permitting them to be polled in order to render it certain that there is, in truth, entire unanimity; and if, when the verdict is so returned, any of the jury dissent, all the authorities agree that it cannot be received, but the jury will be sent back to consider further of their verdict. But where, by consent of parties, they are permitted to return a sealed verdict to the Clerk during the recess of the Court, and then separate and mingle with the rest of the community, to permit them to be afterwards polled, to answer whether they are still agreed, after having heard the opinions of others and been subjected to improper influences, would be to render the sealed verdict as unsafe and insecure as the ancient privy verdict; which Blackstone says "is of no force, unless affirmed by a public verdict given openly in Court; wherein the jury may, if they please, vary from the privy verdict. So that the privy verdict is indeed a mere nullity; and yet it is a dangerous practice, allowing time for the parties to tamper with the jury, and therefore very seldom indulged." (3 Bl. Com. 377.) The sealed verdict is held by modern authorities not to be liable to the objections which existed to the privy verdict. It is not, it is said, like that, a "mere nullity;" but affords to the accused all the security that justice requires, and fully preserves all his rights. (3 Gr. & W. on New Trials, 1410.) In Courts where the practice of permitting the jury to be polled obtains, when the jury seal their verdict and then separate, and afterwards, when the Court convenes, return it into Court, "the verdict thus returned, (it is said,) has the same effect, and must be treated in the same manner as if returned in open Court, before any separation of the jury had taken place. But if, after having once agreed, and put their verdict under seal, a jury shall separate, and subsequently meet in their room and change this sealed verdict, such altered verdict could not, with any propriety, lay the foundation of a judgment. Such conduct in a jury would constitute that degree of misbehavior for which a verdict ought to be set aside." (2 Id. 550–551; 8 Ohio, 408.) The practice of polling the jury in the case of a sealed verdict in the manner contended for in this case, would be to sanction just such misbehavior in the jury. But if the verdict, as this authority says, is to have the same effect, and is to be treated in the same manner as if returned in open Court, before any separation

of the jury had taken place, and the parties are restricted to the inquiry whether it was their verdict when sealed and returned, the practice will be freed from the liability to abuse; and it may be truly said the verdict thus returned will afford parties all the security that justice requires, and fully preserve all their rights.

The sealed verdicts treated of by the authorities generally, are not in cases like the present, where, by authority of the Court and consent of parties, the jury have returned their verdict sealed to the Clerk of the Court. They are where the jury having sealed their verdict in their room, afterwards come into Court and vary its terms; and then, it is said, the latter is the true verdict; (10 Bac. Ab. Tit. "Verdict" (F);) or where, after having thus sealed their verdict, without the permission of the Court or consent of parties, they disperse, and afterwards reassemble and change it; and then, it is said, as we have seen, that such altered verdict will not be received. (8 Ohio, 408.) But where the parties have consented that the jury might return their verdict sealed to the Clerk, we think they must be deemed impliedly to have consented that the verdict so returned, if in truth agreed to by all the jurors at the time, should be received without further question, or the reservation to the jury of the right to change it after having dispersed with their consent, and heard the out-of-doors opinions of the parties and their friends. Such a practice would manifestly lead to abuses; and the consequence would be that there would be no safety in permitting or consenting to such verdicts, and though a very convenient practice, it would become too dangerous to be tolerated. Indeed it would be better not to allow the practice at all, than to permit it with the reservation of the right claimed in this case. In Nichols v. The S. Man. Co. (4 Foster, 439) it was said "The permission to the jury to seal up their verdict and separate before their verdict is returned into Court, is given here only by consent of parties. Such consent operates as a waiver of any right which would be practically inconsistent with such permission. It would be most unreasonable to permit a verdict to be rejected because of a change of opinion, by a juror who had deliberately agreed to it, after he had been exposed to the solicitations of the parties, or other improper influences." So we think in the present case. And we conclude that by consenting to the return of the verdict in this manner and the separation of the jury, the parties must be held to have waived the right to have the jury polled, unless it be for the purpose of ascertaining whether they were all agreed

to it when it was returned; and that it is to be received and recorded, subject only to that inquiry. We are of opinion therefore that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.